1  Thomas Christy, Esq.(SBN 159818)
   LAW OFFICE OF THOMAS CHRISTY
2  9750 Miramar Road, Suite 215
   San Diego, California 92126
3  (858) 586-0486
   tom@thomaschristy.com
4

5  Attorney for Plaintiff
   SYDNEY FRANCIS
6

FILED
JUL 21 2016
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

7

8           UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF CALIFORNIA
9

10 SYDNEY FRANCIS,                    Case No. 16 CV 1860 WQH WVG

11           Plaintiff                **COMPLAINT FOR DAMAGES**
12
   V.
13

14 OREGON STATE UNIVERSITY,           JURY TRIAL DEMANDED
   TARAS LISKEVYCH, and DOES 1
15 Through 100 inclusive

16           Defendants

17
   COMES NOW the Plaintiff named herein, and for Complaint against the Defendants named herein,
18
   Plaintiff further shows the Court the following:
19

20
                        JURISDICTION AND VENUE
21
   Jurisdiction in this Complaint is based on complete Diversity of Citizenship between Plaintiff and
22
   Defendants and the matter in controversy greatly exceeds the sum of seventy-five thousand dollars
23
   ($75,000.00), exclusive of interest and costs. In addition, venue is proper in this Court as the original
24
   contract was made, in part in the Southern District of California.
25       GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
26     1.  Plaintiff SYDNEY FRANCIS, (Hereinafter "FRANCIS") is an individual, a resident of
27 San Diego County California, and a student at OREGON STATE UNIVERSITY.
       2.  Defendant OREGON STATE UNIVERSITY (Hereinafter "OSU"), is a coeducational,
28

1

1 public research university located in Corvallis, Oregon.

2     3. Defendant TARAS LISKEVYCH (Hereinafter "Coach Terry") is an individual and head coach of the women's volleyball team at OSU.

    4. The true names and capacities of DOES 1 through 100 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will seek leave of court to amend this complaint to allege each Defendant's true name and capacity when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible, in some manner, for the acts and conduct alleged in this complaint and the Plaintiff's harm and losses, as herein alleged, were directly and proximately caused by the acts and conduct of said fictitiously named Defendants.

    5. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants was, and is, the directors, officers, partners, agents, servants, representatives, independent contractors, joint venturers, alter-egos and/or employee of each or some of the Defendants named herein, and in doing the things alleged in this complaint, each such Defendant was acting within the course and scope of said representative capacity with the full knowledge, consent, approval, permission and ratification of each other Defendant named herein.

## FIRST CAUSE OF ACTION
(Breach of Contract)

    6. Plaintiff refers to paragraphs 1 through 5 and incorporate the same herein as though fully set forth in this place.

    7. In 2012 and 2013 Sydney Francis, (FRANCIS) had drawn the attention of collegiate recruiters from a number of universities who were seeking to recruit talented players to play for their women's volleyball programs. FRANCIS was a stellar player, a four-year starter and an outstanding student at La Costa Canyon High School in San Diego, California.

    8. Defendant Taras Liskevych (COACH TERRY) was the head coach of the women's volley ball team at Defendant Oregon State University (OSU) and had come to San Diego a number of times to witness FRANCIS playing in games and tournaments to evaluate her talent level and determine whether she was good enough player to recruit for the program.

2

9. COACH TERRY, had observed her play during her junior year (2012) and her senior Year (2013) and concluded that she was a very good player and important enough that she should be offered an athletic scholarship to play at OSU.

10. By her senior year, FRANCIS had already received scholarship offers from other universities and was assessing the various universities, the academics, the athletic program, coaches, locale and ultimately whether they offered scholarships, as paying tuition would be a financial hardship.

11. COACH TERRY actively sought to recruit FRANCIS and met with her on several occasions and tried to persuade her to play at OSU. COACH TERRY represented to FRANCIS and her family that he would offer 2 years of full scholarship for her Freshman and Senior years. At no time were any conditions or qualifications placed on the offer. After some consideration, FRANCIS agreed to play for COACH TERRY at OSU and committed to the university.

12. For her Freshman and Sophomore years FRANCIS was the ideal student athlete. She was an honor student and good player. She worked hard, took instruction easily, attended all the practices and meetings, and was well-liked by both the coaches and her teammates.

13. Although FRANCIS had unequivocally been promised that she would receive 2 years of paid scholarship, in May 2014, COACH TERRY called a meeting with FRANCIS and told her that in order to receive her second year of scholarship she would have to earn it. FRANCIS was further told that unless she started more than one-half of the games she would not get her scholarship.

14. This information was completely contrary to the agreed upon scholarship offer presented to FRANCIS when she accepted the offer to come and play for OSU. Further, COACH TERRY had complete control over FRANCIS' playing time and could arbitrarily bench her and make it impossible for FRANCIS to fulfill this new demand.

15. This exact scenario waswhat came to pass at the beginning of FRANCIS Junior year. Notwithstanding the fact that FRANCIS had a great pre-season and was playing well going into the season, FRANCIS' playing time was reduced so substantially that she would not even play in the games. The reduction of her playing time was automatically done just by the coach altering the playing scheme where the defensive players were replaced by offensive players. As a result, it was apparent the FRANCIS would not be able to fulfill this new requirement and receive the scholarship for her Senior year.

3

16. A meeting was scheduled on November 30, 2015 to discuss the situation. COACH TERRY and two other coaches were present. Nominally it was presented as a meeting to assess a player's strengths and weaknesses. Once the meeting commenced however, it became immediately obvious that the meeting was not for the purpose of a genuinely evaluating FRANCIS' skill as a player, but one in which FRANCIS was to resign herself to the fact that her scholarship had been taken from her.

17. FRANCIS was devastated that she had been lied-to and manipulated to fail. She informed her parents of the situation and contacted the university's office of Equity and Inclusion to protest her treatment and request a hearing on the matter.

18. In addition, FRANCIS' father sent a letter to the Athletic Department inquiring about the situation, and the prior representations which had been made to FRANCIS and her family.

19. In retaliation, without warning or justifiable cause, COACH TERRY dismissed FRANCIS from the team.

20. A conference regarding the matter was conducted in January 2016. In an attempt to support his conduct, COACH TERRY cited FRANCIS' lack of play, and made false statements ostensibly attributable to FRANCIS to make her look as if she were a poor player who was insubordinate and confrontational.

21. FRANCIS to some degree had anticipated that COACH TERRY would seek to justify his conduct by attacking her, so she had prepared herself with the accurate record of the events and statements to demonstrate that COACH TERRY was then attempting to cover-up his conduct by defaming her.

22. As further evidence that COACH TERRY was retaliating against FRANCIS and kicked her off the team unrelated to her performance, she had recently received her "Returnee Players Letter" which was approved by the coaching staff and given out only to the players who were part of the team and expected to follow the instructional program to prepare for the next season.

23. FRANCIS was then contacted by the Athletic Department and began pressuring her to accept an invalid 3-term scholarship deal instead of the 4-term, which was in violation of NCAA rules. FRANCIS refused to accept the offer.

4

24. Later, in a belated attempt to minimize the harm, the Athletic Department gave back to FRANCIS her Senior year of Scholarship to which she was entitle, but was off the team would not compete in her Senior year.

25. OSU through their agent, COACH TERRY offered FRANCIS a 2-year Athletic Scholarship, without qualification or condition in 2014 to play volleyball at OSU. FRANCIS accepted the offer and an agreement was made by FRANCIS' acceptance of the offer.

26. OSU breached that agreement without consent or justifiable cause by cancelling FRANCIS Senior year of scholarship and dismissing her from the team.

27. FRANCIS has suffered harm and damage as a direct and proximate result of Defendant's breach of the agreement in an amount to be determined at time of trial.

## SECOND CAUSE OF ACTION
### (Fraud/Deceit)

28. Plaintiff refers to paragraphs 1 through 27 and incorporates the same herein as though fully set forth in this place.

29. Defendants made intentional statements and representation to Plaintiff in order to induce the Plaintiff to enter into the agreement. The Defendants knew the statements and representations were false. The Plaintiff justifiably relied on the statements and representations.

30. FRANCIS has suffered harm and damage as a direct and proximate result of Defendant's Fraud/Deceit in amount to be determined at time of trial.

## THIRD CAUSE OF ACTION
### (Fraud/Bad Faith)

31. Plaintiff refers to paragraphs 1 through 30 and incorporates the same herein as though fully set forth in this place.

32. If at the time the agreement was entered into, the Defendants did not knowingly make false statements and representations to Plaintiff in order to induce her to enter into the agreement, Defendants later intentionally acted in bad faith to defraud the Plaintiff by falsely claiming that additional performance was required by the Plaintiff and then intentionally prevented her from doing so.

33. Defendants acted in bad faith and fraudulently as they knew the claims of additional performance were false and intentionally and wrongfully prevented the Plaintiff from performing.

34. FRANCIS has suffered harm and damage as a direct and proximate result of Defendant's Fraud/Bad Faith in an amount to be determined at time of trial.

## FOURTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

35. Plaintiff refers to paragraphs 1 through 34 and incorporates the same herein as though fully set forth in this place.

36. Defendants conduct of deceiving and defrauding Plaintiff cause her severe emotional distress.

37. Defendants conduct was outrageous in that the Defendants abused a position of authority as coaches and mentors and had real and/or apparent power to affect Plaintiff's interest.

38. Further, Defendants conduct was outrageous as the Defendant's knew as a player Plaintiff was not only subject to Defendant's apparent position of authority, but also that she was especially vulnerable as they had control over her financial interest in her scholarship and would be emotionally distressed by the threat of withdrawing the scholarship.

39. Defendants knew that the conduct would result in Plaintiff's emotional distress.

40. FRANCIS has suffered harm and damage as a direct and proximate result of Defendant's Intentional Infliction of Emotional Distress in an amount to be determined at time of trial.

## FIFTH CAUSE OF ACTION
(Civil Conspiracy)

41. Plaintiff refers to paragraphs 1 through 40 and incorporates the same herein as though fully set forth in this place.

42. Plaintiff was harmed by the conduct of two or more individuals who agreed to the wrongful conduct.

43. A civil conspiracy was formed between two or more Defendants who knew of the

circumstances and consented, intended, and/or acquiesced to the conduct in the furtherance of the wrongdoing.

44. FRANCIS has suffered harm and damage as a direct and proximate result of Defendant's Civil Conspiracy in an amount to be determined at time of trial.

## SIXTH CAUSE OF ACTION
### (Punitive Damages)

45. Plaintiff refers to paragraphs 1 through 44 and incorporates the same herein as though fully set forth in this place.

46. The aforementioned Fraud-Deceit, Fraud-Bad Faith, Intentional Infliction of Emotional Distress and Civil Conspiracy was done with a conscious disregard of the rights of the Plaintiff and and constitutes malice, fraud, and/or oppression under California Civil Code Section 3294 thereby entitling Plaintiff to punitive and exemplary damages in an amount sufficient to punish and deter Defendants.

WHEREFORE, Plaintiff seeks judgment and Defendants, and each of them as follows:

**FOR THE FIRST, SECOND, THIRD, FOURTH, FIFTH AND SIXTH CAUSE OF ACTION OF THIS COMPLAINT:**

1. For damages in amount to be determined by proof at trial;
2. For interest according to law;
3. For punitive damages according to proof;
4. Costs of the suit according to law;
5. For attorney's fees pursuant to written agreement or by statute; and
6. Such further relief as the court deems proper.

Dated: July 1, 2016

Respectfully submitted,

_____

Thomas Christy, Attorney for Plaintiff
SYDNEY FRANCIS

7